ANDREW AITKEN ET AL., PROSECUTORS, v. BOARD OF REVIEW OF THE UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY AND HINDE & DAUCH PAPER CO., RESPONDENTS.

Submitted October 7, 1947—Decided January 12, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutors, *Harry Green.*

For the Board of Review of Unemployment Compensation Commission, *Clarence F. McGovern.*

For Hinde & Dauch Paper Co., *Starr, Summerill & Lloyd.*

The opinion of the court was delivered by

BODINE, J.   A writ of *certiorari* in this case was allowed to review the decision of the Board of Review of the Unemployment Compensation Commission dated January 20th, 1947, denying unemployment benefits to the prosecutors, members of a local union.  They did not work because a picket line had been established by another union from another state and this they would not cross.

The conclusion of the Board of Review was that the voluntary refusal of the claimants to cross the picket line amounted to participation in a labor dispute at the place of employment, and for that reason they were disqualified.  *R. S.* 43:21–5.

The Hinde & Dauch Paper Company have a manufacturing plant at Gloucester City, N. J., and also one at Sandusky, Ohio.  In the first instance, there was no work stoppage at

the Gloucester City plant. There was a strike at the Sandusky, Ohio, plant. The workers at the Gloucester City plant were satisfied with their working conditions and had no grievance. The local union at the Gloucester plant at first protested against and refused to support in any financial way the Sandusky strike, but the Sandusky strikers came into New Jersey and established a picket line.

It is argued that since there was no labor dispute at the New Jersey plant the workers were entitled to their unemployment benefits.

The statute (*R. S.* 43:21–5), so far as pertinent, is as follows: "An individual shall be disqualified for benefits: * * * (d) For any week with respect to which it is found that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown that:

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly * * * conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

The Gloucester Local is No. 358. Its president on July 29th, 1946, wrote to the vice-president of the Paper Company that a resolution had been adopted that no work would be handled by No. 358 normally handled by Sandusky; that they would abide by the terms of their present contract, but morally and financially supported the strike for adequate wages at the other plants. The prosecutors did not cross the picket line.

The stoppage of work commenced August 12th, 1946, and ended October 28th, 1946. The Sandusky pickets were present throughout this period. The maintenance men alone worked.

The disqualification is with respect to unemployment due to the stoppage of work due to a labor dispute at the factory at which the prosecutors were last employed.

"Sympathetic Strikes and Lockouts. This is an additional classification of disputes * * *. In these cases there is no dispute between the employer and his employees, but action is taken by one or the other party as the result of a dispute elsewhere. The British disqualification provisions was held without any serious question to apply in such circumstances. Under the 'stoppage of work' provisions in force in the United States, the same result probably will be reached, whether the British theory or the 'voluntary' theory is followed." Principles Underlying Labor-Dispute Disqualification, July, 1946, by Marsile J. Hughes, printed by Federal Security Agency, Social Security Administration, Washington, District of Columbia. The discussion in this valuable article somewhat clarifies the statute.

It seems to us that the fact finding by the Board of Review of the Unemployment Compensation Commission was proper. The contract which the local union had called for work and the refusal to cross the picket line was voluntary. True, the local was not in favor of the strike except that they would not cross the line. That was their privilege, but the statute is clear as to the disqualification for unemployment compensation. The legislature could, but it has not, changed the disqualification. The stoppage of work was undoubtedly due to the labor dispute, and whether that dispute met with the approval or disapproval of the local they still did not work because of it.

Clearly, they were not entitled to their compensation and the judgment of the Board of Review will be affirmed.